# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA
*ex. rel.* MICHELE YATES,

      Plaintiff,

v.                            CASE NO.  8:16-cv-799-T-02TGW

PINELLAS HEMATOLOGY &
ONCOLOGY, P.A. and
PRATIBHA DESAI,

      Defendants.

_____/

## JURY INSTRUCTIONS

Members of the Jury:

It is now my duty to instruct you on the rules of law that you must

follow and apply in deciding this case.  After I complete these instructions and

after the attorneys complete the summations, you will go to the jury room and

begin your discussion — what we call your deliberation.

You must follow the law as I explain it — even if you do not agree with the law — and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and stand equal in a court of justice. Of course, a corporation may act only through people as the corporation's employees; and, in general, a corporation is responsible under the law for any act or statement of an employee that is made within the scope of the employee's duty for the company.

In your deliberations you should consider only the evidence — that is, the testimony of the witnesses, the exhibits I have admitted in the record, and the stipulations by the parties — but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make.

"Direct evidence" is the testimony of one, such as an eye witness, who asserts actual knowledge of a fact.

"Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute.  The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I might have said during the trial in arriving at your decision concerning the facts.  It is your own recollection and interpretation of the evidence that controls.

Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate.  You should decide whether you believe what each witness had to say, and you should decide how important that testimony was.  In making that decision you may believe or disbelieve any witness, in whole or in part.  In other words, you should consider all the facts and circumstances in evidence to determine which of the witnesses to believe and the weight you will give to that testimony.

In deciding whether you believe any witness I suggest that you ask yourself a few questions:

1.      Did the witness impress you as one who was telling the truth?

2.      Did the witness have any particular reason not to tell the truth?

3.      Did the witness have a personal interest in the outcome of the case?

4.      Did the witness seem to have a good memory?

5.      Did the witness have the opportunity and ability to observe accurately the things about which the witness testified?

6.      Did the witness appear to understand the questions clearly and answer them directly?

7.      Did the witness's testimony differ from the testimony of other witnesses?

You should also ask yourself whether there was evidence tending to prove that a witness testified falsely concerning some important fact; or, whether there was evidence that at some other time a witness said or did something, or failed to say or do something, that differed from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as the witness remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether the misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether the misstatement has to do with an important fact or with only an unimportant detail.

If technical or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified by knowledge, skill, experience, training, or education may testify and may state an opinion. Typically, a witness of this kind is called an "expert" witness. You have heard one or more expert witnesses during the trial.

As I instructed you during the trial, merely because an expert witness has expressed an opinion does not mean that you must accept the opinion. You should judge this witness's testimony like any other testimony.

A party that asserts a claim, in this case Ms. Yates, must prove each element of the party's claim by a "preponderance of the evidence."  This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" means an amount of evidence that is enough to persuade you that the party's claim is more likely true than not true.

In deciding whether any fact has been proved by a preponderance of the evidence you should consider all the evidence, including the testimony of all of the witnesses, regardless of who called them, and all of the exhibits received in evidence, regardless of who produced them.

The federal False Claims Act allows a private citizen called a "relator" to bring an action in the name of the United States against any person, a term that includes a corporation, who allegedly violates the False Claims Act.

In this case, Ms. Yates brings the claim, so she is the relator, the plaintiff.  The two defendants in this action are:

1.   Pinellas Hematology & Oncology, P.A., will be referred to as PHO; and

2.   Dr. Pratibha Desai is the president of Pinellas Hematology & Oncology, P.A. and works there as a physician.

The relator alleges three separate claims against the defendants.  You will see these three claims set forth in the verdict forms.

I will now explain the claims.

To establish a false claim under the Act, the relator must prove by a preponderance of the evidence:

> One: that a defendant presented or caused to be presented a claim to Medicare ~~or Medicaid~~;
>
> Two: that the claim, at the time presented or caused to be presented, was false or fraudulent;
>
> Three: that the false or fraudulent claim was made knowingly; and
>
> Four: that the false or fraudulent claim was material.

A "claim" includes any request or demand for money that is presented to the government — in this case, to Medicare.

A claim is "false or fraudulent" if, when made, the claim is untrue because the claim misstates or omits a material fact. The relator must prove that a claim was false or fraudulent and not simply subject to a reasonable difference of opinion or honest mistake.

In an action under the False Claims Act, "knowingly" means (a) with actual knowledge of falsity or (b) with deliberate ignorance of truth or falsity or (c) with reckless disregard of the truth or falsity of information.  But neither proof of an honest mistake nor proof of a negligent error is enough to prove that an act is done "knowingly."

Finally, what does the word "material" mean in this instance?

In general, a fact is a "material" fact if a reasonable person would find the fact influential in making a decision, that is, in deciding to do or not to do something important. To use an everyday example, suppose that a shopper went to an automobile dealership. If the shopper buys a car after the salesperson says something untrue to the shopper about the car and if the buyer regarded the salesperson's untrue statement as influential in his decision to buy, the statement the salesperson made was "material." But if the shopper did not regard the salesperson's untrue statement as influential in the decision to buy, the statement was not material.

In the law of Medicare as it applies to this case, (1) if a defendant made or caused to be made a claim for payment from Medicare after providing some service or product to a patient, (2) if a defendant in providing that service or product has not, for example, complied with some applicable governmental requirement, and (3) if the government does not know that the defendant has not complied, then the defendant's compliance is "material" if a preponderance of the evidence shows that the government would likely refuse to pay the defendant the Medicare claim if the government knew about the non-compliance. The defendant's compliance is not "material" if a

preponderance of the evidence proves that regardless of a known non-compliance the government would likely pay the defendant the Medicare claim.  Certainly a non-compliance is not material if the non-compliance is minor or insubstantial.

In deciding whether a fact is material to the government's decision to pay a Medicare or Medicaid claim, you may consider the totality of the circumstances, including the nature and structure of the applicable government program, the nature and mode of delivery of the services provided, the circumstances of those providing and receiving the services, and the history of billing and payment between the government, on one hand, and a defendant and other providers, on the other.

Proof of materiality can include, but is not limited to, evidence that a defendant knows that, based on noncompliance with the requirement at issue, the government consistently refuses to pay claims in a typical or usual case of the same kind.  Conversely, if in a typical or usual case of the same kind the government consistently pays a similar claim in full despite knowledge that the requirements at issue were violated, that is very strong evidence that those requirements are not material.

The words "claim," "false," "knowingly," and "material" keep the same

*Yates v. Pinellas Hematology*
*Case No. 8:16-cv-799-T-02TGW*
*Page 15*

meaning throughout the balance of these instructions.

A relator may also establish a violation of provision (B) of the federal False Claims Act, if the relator establishes by a preponderance of the evidence that a defendant knowingly (1) made, used, or caused to be made or used (2) a false record or statement (3) that was material to a false or fraudulent claim.

A false statement or record is a statement or record that is untrue when made.

If you find that the relator has proved one or more of her claims under the first two claims asserted under the False Claims Act against one or both of the defendants by a preponderance of the evidence, you must determine the damages, if any, the government suffered.  The measure of damages in this case is the difference between what the government actually paid as the result of a false or fraudulent claim and what the government would have paid had the government known every fact material to the government's decision whether to pay the claim.

The damages that you award for violations of the False Claims Act must be fair compensation for all of the government's losses, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendants. You should not award any damages for speculative harm, but only for harm that the government has actually suffered and that the relator has actually proved. Even if you find that a false claim has been submitted, if the relator has failed to introduce sufficient evidence from which to calculate damages, then the relator has not satisfied her burden and no damages need be awarded.

Keep in mind that damages need not be proved with mathematical precision; you may — based on a preponderance of the evidence — make a just and reasonable estimate of the damages.

Of course, you should not interpret the fact that I have given instructions about damages as an indication either that you should find a violation of the False Claims Act or that you should award damages.

*Yates v. Pinellas Hematology*
*Case No. 8:16-cv-799-T-02TGW*
*Page 19*

The relator contends that each of the defendants knowingly submitted, or caused to be submitted, more than one false claim for payment to the government.  If you find by a preponderance of the evidence that a defendant is liable under the False Claims Act, you must specify on the verdict the number of false claims proved by a preponderance of the evidence.

In this case, Ms. Yates claims that the defendants retaliated against her employment because she took steps to stop violations of the False Claims Act. This is her third claim which I address now.

The False Claims Act prohibits an employer from taking any retaliatory action against an employee because the employee has performed acts in furtherance of a False Claims Act action. This includes reporting violations of the False Claims Act to government authorities.

An employee may take lawful acts to enforce the False Claims Act if the employee believes in good faith that his or her employer has submitted false claims. So, even if allegations against an employer are later found to be invalid or without merit, the employee cannot be penalized in retaliation for having made such allegations. To establish "good faith," however, it is insufficient for Ms. Yates merely to allege that her belief was honest and bona fide; the allegations and the record must also establish that the belief, though perhaps mistaken, was objectively reasonable.

Ms. Yates claims that the defendants demoted and then fired her because she took lawful steps to prevent the submission of false claims, including that she reported to government authorities that PHO was filing false claims to Medicare for payment.

*Yates v. Pinellas Hematology*
*Case No. 8:16-cv-799-T-02TGW*
*Page 21*

PHO and Dr. Desai deny Ms. Yates's claim and assert that at the time of her discharge they did not know that she had engaged in "protected activity," and that Ms. Yates was fired for a legitimate non-discriminatory reason.

To succeed on her claim, Ms. Yates must prove each of the following facts by a preponderance of the evidence:

First:        Ms. Yates engaged in protected activity;

Second:    the defendants took an adverse employment action;

Third:       the defendants took the adverse employment action because of Ms. Yates's protected activity; and

Fourth:     Ms. Yates suffered damages because of the adverse employment action.

For the First element, Ms. Yates claims that she took steps in furtherance of a False Claims Act claim by notifying the government of PHO's improper billing practices.  That action is "protected activity" if it was based on Ms. Yates's good-faith, reasonable belief that PHO had submitted false claims to the government.  Ms. Yates had a "good faith" belief if she honestly believed that PHO had submitted false claims or improperly billed Medicare.  Ms. Yates had a reasonable belief if a reasonable person would, under circumstances, believe that PHO had submitted false claims or improperly billed Medicare.  For Claim Number 3 (retaliation), Ms. Yates does not have

to prove that PHO actually submitted false claims or improperly billed Medicare. But she must prove that she had a good-faith, reasonable belief that PHO did so.

For the second element, Ms. Yates claims that the defendants took an adverse employment action against her and demoted her, reduced her pay, and then terminated her employment. The defendants deny this happened. You must decide whether these amount to adverse employment actions.

An "adverse employment action" is any type of action that would have made a reasonable employee reluctant to make false claim allegations. Put another way, if a reasonable employee would be less likely to raise False Claims Act allegations because she knew that the defendants would reduce her pay and terminate her employment, then that action is an adverse employment action. If any employment action would not make it less likely for a reasonable employee to make allegations of false claims, it is not adverse employment action.

For the third element, if you find that Ms. Yates engaged in protected activity and that the defendants took an adverse employment action against her, you must decide whether the defendants took that action because of Ms. Yates's protected activity. Put another way, you must decide whether Ms.

*Yates v. Pinellas Hematology*
*Case No. 8:16-cv-799-T-02TGW*
*Page 23*

Yates's protected activity was the main reason for the defendants' decision.

To determine that the defendants took an adverse employment action because of Ms. Yates's protected activity, you must decide that the defendants would not have taken the action had Ms. Yates not engaged in the protected activity but everything else had been the same.

The defendants claim that they did not demote and/or terminate Ms. Yates because Ms. Yates alleged to the government that PHO made allegedly false claims to Medicare, and that it took action for other reasons.  An employer may not take an adverse action against an employee because of the employee's protected activity.  But an employer may demote and/or terminate an employee for any other reason, good or bad, fair or unfair.  If you believe the defendants' reason[s] for their decision, and you find that the defendants did not make their decision because of Ms. Yates's protected activity, you must not second guess that decision, and you must not substitute your own judgment for PHO's judgment – even if you do not agree with it.

For the fourth element, you must decide whether the defendants' acts were the proximate cause of damages that Ms. Yates sustained.  Put another way, you must decide, if the defendants had not demoted and/or terminated Ms. Yates, would these damages have occurred?

If you find that the defendants' acts were the proximate cause of damages that Ms. Yates sustained, you must determine the amount of damages.

When considering the issue of Ms. Yates's compensatory damages for retaliation as to one or both of the defendants,  you should determine what amount, if any, has been proven by Ms. Yates by a preponderance of the evidence as full, just and reasonable compensation for all of her damages as a result of the demotion and termination, no more and no less.  Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize the defendants.  Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Ms. Yates has proved them by a preponderance of the evidence, and no others:

(a)     net lost wages and benefits from the date of discharge or the denied promotion to the date of your verdict; and

(b)     emotional pain and mental anguish.

To determine the amount of Ms. Yates's net lost wages and benefits, you should consider evidence of the actual wages she lost and the monetary value of any benefits she lost.

To determine whether and how much Ms. Yates should recover for emotional pain and mental anguish, you may consider both the mental and

physical aspects of injury – tangible and intangible.  Ms. Yates does not have to introduce evidence of a monetary value for intangible things like mental anguish.  You will determine what amount fairly compensates her for her claims.  There is no exact standard to apply, but the award should be fair in light of the evidence.

You must consider the case of each defendant and the evidence relating to the defendant separately and individually.  If you find one defendant liable for violating the False Claims Act, that must not affect your verdict for the other defendant.

Any verdict you reach in the jury room must be unanimous.  In other words, to return a verdict you must all agree.  Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong.  But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges — judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court. A form of verdict (two of them) has been prepared for your convenience.

[Explain verdicts]

You will take the verdict forms to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict forms, date and sign them, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

*Yates v. Pinellas Hematology*
*Case No. 8:16-cv-799-T-02TGW*
*Page 31*